1
2
3
4
5
6
7
8
9
10
11
12

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION**

| | |
|---|---|
| MONICA SEHOVIC, | )   Case No. EDCV 19-00953-AS |
|                Plaintiff, | )   **MEMORANDUM OPINION** |
|     v. | ) |
| ANDREW M. SAUL, Commissioner of the Social Security Administration,[1] | ) |
|                Defendant. | ) |

For the reasons discussed below, IT IS HEREBY ORDERED that, pursuant to Sentence Four of 42 U.S.C. § 405(g), the Commissioner's decision is affirmed.

**PROCEEDINGS**

On May 22, 2019, Monica Sehovic ("Plaintiff") filed a Complaint seeking review of the denial of her application for Disability Insurance

---

[1]     Andrew M. Saul, the Commissioner of the Social Security Administration, is substituted for his predecessor. <u>See</u> 42 U.S.C. § 405(g); Fed.R.Civ.P. 25(d).

Benefits by the Social Security Administration.  (Docket Entry No. 1).
The parties have consented to proceed before a United States Magistrate
Judge.  (Docket Entry Nos. 11-12).  On November 4, 2019, Defendant filed
an Answer along with the Administrative Record ("AR").  (Docket Entry
Nos. 15-16).  On January 27, 2020, the parties filed a Joint Stipulation
("Joint Stip.") setting forth their respective positions regarding
Plaintiff's claims.  (Docket Entry No. 17).[2]

The Court has taken this matter under submission without oral
argument.  See C.D. Cal. L.R. 7-15; Docket Entry No. 9 at 8.

## BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On March 3, 2016, Plaintiff, formerly employed as a chart prep
clerk at a medical office and as a customer service supervisor at a
casino (see AR 304, 483-85), filed an application for Disability
Insurance Benefits alleging a disability onset date of March 1, 2014.
(See AR 435-41).  Plaintiff's application was denied, initially on May
5, 2016, and, on reconsideration on July 12, 2016.  (See AR 344-47, 352-
56).

On May 4, 2018, Plaintiff, represented by counsel, testified at a
hearing before Administrative Law Judge ("ALJ") Josephine Arno.
Vocational expert ("VE") Lawrence Haney also testified at the hearing.
(See AR 301-18).  On May 23, 2018, the ALJ issued a decision denying
Plaintiff's request for benefits.  (See AR 18-30).  Applying the five-
step sequential process, the ALJ found at step one that Plaintiff had

---

[2]    The case was reassigned to the undersigned Magistrate Judge on
April 2, 2020. (Docket Entry No. 18).

not engaged in substantial gainful activity from March 1, 2014, the alleged disability onset date, through March 31, 2017, the date on which Plaintiff was last insured. (AR 20). At step two, the ALJ determined that Plaintiff had the following severe impairments: "degenerative disc disease of the lumbar spine, fibromyalgia, myositis,[3] obesity and general anxiety disorder." (AR 20).[4] At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments in the regulations.[5] (AR 21-23).

The ALJ then found that Plaintiff had the residual functional capacity ("RFC")[6] to perform light work[7] with the following limitations:

> she may occasionally climb ladders, ropes, scaffolds, ramps or stairs, stoop and crawl; frequently balance, kneel and crouch; may have frequent interaction with coworkers and supervisors; and no contact with the public.

(AR 23-29).

---

[3]   Myositis refers to the inflammation of the muscles due to injury, infection or a possible autoimmune disorder.

[4]   The ALJ found that Plaintiff's other impairments -- hypertension and mild degenerative disc disease of the cervical spine -- were non-severe. (AR 20-21).

[5]   The ALJ specifically considered whether Plaintiff's impairments met the requirements of Listing 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), 11.14 (peripheral neuropathy), and 12.06 (anxiety and obsessive compulsive disorder) and determined that they did not. (AR 21-23).

[6]   A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

[7]   "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

At step four, the ALJ found that Plaintiff was able to perform past relevant work as a front office manager and as a charting clerk, both as actually and generally performed (AR 29-30), and therefore found that Plaintiff had not been under a disability as defined in the Social Security Act from her alleged disability onset date (March 1, 2014), through the date on which she was last insured (March 31, 2017).  (AR 30).

On March 26, 2019, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, finding, *inter alia*, that *certain* records Plaintiff had submitted to the Appeals Council for the first time -- specifically, Desert Clinic Pain and Wellness Institute records dated February 1, 2018 through May 24, 2018 and Inland Psychiatric Medical Center records dated September 21, 2017 through March 22, 2018 -- "do[] not show a reasonable probability that it would change the outcome of the decision." (AR 1-6; AR 430-32).

The Court will consider the newly submitted records in reviewing the Commissioner's decision.  See Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1163 (9th Cir. 2012)("[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence.").[8]

_____

[8]    Plaintiff also submitted to the Appeals Council, for the first time, records from (1) Desert Clinic Pain and Wellness Institute dated June 21, 2018 through September 28, 2018 (see AR 67-75, 78-85, 106-08); (2) Inland Psychiatric Medical Center dated May 31, 2018 through August 9, 2018 (see AR 54-59); and (3) a September 25, 2018 Physical Medical
                                                        (continued...)

1    Plaintiff now seeks judicial review of the ALJ's decision, which

2    stands as the final decision of the Commissioner.   See 42 U.S.C. §§

3    405(g), 1383(c).

4

5                           **STANDARD OF REVIEW**

6

7    This Court reviews the Commissioner's decision to determine if it

8    is free of legal error and supported by substantial evidence.   See

9    Brewes v. Comm'r, 682 F.3d 1157, 1161 (9th Cir. 2012).   "Substantial

10   evidence" is more than a mere scintilla, but less than a preponderance.

11   Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014).   "It means such

12   relevant evidence as a reasonable mind might accept as adequate to

13   support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir.

14   2017).   To determine whether substantial evidence supports a finding,

15   "a court must consider the record as a whole, weighing both evidence

16   that supports and evidence that detracts from the [Commissioner's]

17

18   _____

     ⁸   (...continued)
     Source Statement from Desert Clinic Pain and Wellness Institute (see AR
19   (see AR 110-12).   The Appeals Council found that these records did not
     relate to the period at issue (March 1, 2014 though March 31, 2017) and
20   therefore were not material to the ALJ's determination about whether
     Plaintiff was disabled from March 1, 2014, the alleged disability onset
21   date, through March 31, 2017.   See 42 U.S.C. § 423(d)(1)(A); Sanchez v.
     Sec'y of Health & Human Services, 812 F.2d 509, 512 (9th Cir. 1987)("The
22   new evidence indicates, at most, mental deterioration after the hearing,
     which would be material to a new application, but not probative of his
23   condition at the hearing."); Smith v. Massanari, 32 Fed.Appx 342, 343
     (9th Cir. 2002)("The evidence relates to [the claimant's] condition
24   after the disability hearing, and is therefore not material to her
     condition at the time of the hearing.").   Therefore, the Court will not
25   take into account such records in its analyses of Petitioner's claims.

26

27

28

conclusion." <u>Aukland v. Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001)(internal quotation omitted).  As a result, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir. 2006).

**PLAINTIFF'S CONTENTIONS**

Plaintiff contends that ALJ Arno erred in failing to properly: (1) evaluate the opinions of Plaintiff's treating physician (Dr. Moeller-Bertram) and the consultative examining psychologist (Dr. Cross) in assessing Plaintiff's RFC; and (2) evaluate Plaintiff's subjective symptom testimony.  (<u>See</u> Joint Stip. at 4-8, 15-20, 24-26).

**DISCUSSION**

After consideration of the record as a whole, the Court finds that the Commissioner's findings are supported by substantial evidence and are free from material legal error.[9]

**A.   The ALJ Properly Weighed the Opinion of Plaintiff's Treating Physician**

Plaintiff asserts that the ALJ failed to properly assess the opinion of her treating physician, Dr. Moeller-Bertram (<u>See</u> Joint Stip.

---

[9]   The harmless error rule applies to the review of administrative decisions regarding disability.  <u>See</u> <u>McLeod v. Astrue</u>, 640 F.3d 881, 886-888 (9th Cir. 2011).

at 5-8).   Defendant asserts that the ALJ properly evaluated Dr. Moeller-Bertram's opinion.   (See Joint Stip. at 8-15).

1.   Legal Standard

An ALJ must take into account all medical opinions of record. 20 C.F.R. § 404.1527(b).[10]   "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); see also Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).   The medical opinion of a treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."   20 C.F.R. § 404.1527(c)(2). "When a treating doctor's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, and consistency of the record."   Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017); see also 20 C.F.R. § 404.1527(c)(2)-(6).

---

[10]   Since Plaintiff filed her application *before* March 27, 2017, 20 C.F.R. § 404.1527 applies.   For an application filed *on or after* March 27, 2017, 20 C.F.R. § 404.1520c would apply.   20 C.F.R. § 404.1520c changed how the Social Security Administration considers medical opinions and prior administrative medical findings, eliminated the use of the term "treating source," and eliminated deference to treating source medical opinions.   See 20 C.F.R. § 404.1520c(a); L.R. v. Saul, 2020 WL 264583, at *3 n. 5 (C.D. Cal. Jan. 17, 2020); see also 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016).

If a treating or examining doctor's opinion is not contradicted by another doctor, the ALJ can reject the opinion only for "clear and convincing reasons." Carmickle v. Commissioner, 533 F.3d 1155, 1164 (9th Cir 2008); Lester, 81 F.3d at 830.  If the treating or examining doctor's opinion is contradicted by another doctor, the ALJ must provide "specific and legitimate reasons" that are supported by substantial evidence in the record for rejecting the opinion.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007); Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998); Lester, supra.  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017)(citation omitted).  An ALJ may reject an opinion of any physician that is conclusory, brief, and unsupported by clinical findings.  Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2015); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

2.   Dr. Moeller-Bertram

Tobias Moeller-Bertram, M.D., a pain management specialist at Desert Clinic Pain and Wellness Institute ("Desert Clinic") in Indio, California, treated Plaintiff from September 3, 2015 to September 28, 2018 for neck and lower back pain and fibromyalgia.[11]

_____

[11]   See AR 67-108 [records dated February 1, 2018 through September 28, 2018], 110-12 [Physical Medical Source Statement dated September 25, 2018], 116-298 [records dated May 18, 2016 through May 24, 2018], 611-33 [records dated September 3, 2015 through March 16, 2016], 677-80 [Fibromyalgia RFC Questionnaire dated November 21, 2016], and 681-85 (continued...)

On November 21, 2016, Dr. Moeller-Bertram submitted an RFC Questionnaire in which he diagnosed Plaintiff with fibromyalgia, lumbar degenerative disc disease and cervical degenerative disc disease, and gave Plaintiff a prognosis of "chronic pain." (AR 677-80). The RFC Questionnaire (1) indicated that Plaintiff's impairments which have lasted or can be expected to last at least twelve months are supported by X-rays and extensive physical exams; (2) identified Plaintiff's fibromyalgia symptoms as multiple tender points, chronic fatigue, morning stiffness, muscle weakness, numbness and tingling, anxiety, panic attacks, depression and chronic fatigue syndrome; (3) reported that Plaintiff is not a malingerer and that emotional factors contribute to the severity of her symptoms and functional limitations; (4) stated that Plaintiff experiences pain "throughout the entire body," that is precipitated by changing weather, stress, fatigue, hormonal changes, movement/overuse, static position and cold; and (5) identified drowsiness and dizziness as side effects of medication that might have implications for Plaintiff working. Id.

The Questionnaire also reported that Plaintiff would experience the following functional limitations in a work environment: (1) Plaintiff's pain or other symptoms interfere with attention and concentration needed to perform even simple work tasks; (2) Plaintiff is incapable of even "low stress" jobs; (3) Plaintiff cannot walk a city block without rest or severe pain and can sit for 30 minutes, stand for 30 to 45 minutes,

[11] (...continued)
[Fibromyalgia RFC Questionnaire dated March 1, 2018]. As set forth above, see note 8, the Court will not consider records from the period June 21, 2018 to September 28, 2018.

and sit and stand/walk (without the use of a cane or other assistive device) for a total of 4 hours in an 8-hour workday; (4) Plaintiff needs to walk around for 10 minutes every 30 minutes, shift positions at will eight times a day, take unscheduled breaks to rest, lie down, take an epson salt bath, and do warm water therapy; and (5) Plaintiff's legs should be elevated 90 degrees during prolonged sitting, and 50 percent of the time for a sedentary job. (AR 678-79). Dr. Moeller-Bertram concluded that Plaintiff can lift less than 10 pounds frequently, 10 pounds occasionally, frequently twist, occasionally stoop (bend), crouch and climb stairs, and can never climb ladders, and although Plaintiff does not have significant limitations in repetitive reaching, handling or fingering, she frequently has tingling and numbness in both of her fourth and fifth fingers, her impairments are likely to produce "good days" and "bad days" and she is likely to be absent from work more than four days per month (one to two days per week). (AR 678-80).

### 3.   The ALJ's Findings

The ALJ gave "little weight" to Dr. Moeller-Bertram's opinion, finding it to be "checklist opinion" unsupported by the objective medical evidence. (AR 28).[12]

---

[12]   Plaintiff takes issue with the ALJ's observation that there was a one and a half-year gap in Plaintiff's treatment with Dr. Moeller-Bertram (from May 2016 to January 2018) (AR 26). (See Joint Stip. at 5). However, it appears, based on the newly submitted records to the Appeals Council, that there was not a large gap in Plaintiff's treatment with Dr. Moeller-Bertram (see AR 67-68, 76-77, 86-105, 109, 116-298, 611-33, 677-80, 681-85), and in any event, the ALJ did not reject Dr. Moeller-Bertram's opinion based on a gap in treatment. (See AR 28).

(continued...)

As set forth below, the ALJ gave clear and convincing, specific and legitimate reasons, supported by substantial evidence for giving  Dr. Moeller-Bertram's opinion little weight.[13]

First, the ALJ noted that Dr. Moeller-Bertram's treatment notes do not indicate that Plaintiff experienced difficulties walking. (AR 28). See AR 611-33 [September 3, 2015 to March 16, 2016], 670-75 [April 13, 2016 to May 18, 2016], 729-43 [January 4, 2018 to March 30, 2018].[14]

---

[12]   (...continued)
Plaintiff also asserts that "in rejecting Dr. Moeller's opinions, the ALJ improperly discounted the limiting effects of fibromyalgia due to a lack of objective evidence." (Joint Stip. at 6).  However, the ALJ did not reject Dr. Moeller-Bertram's opinion for that reason (see AR 28), and instead found that, despite issues with Plaintiff's fibromyalgia diagnosis, Plaintiff's fibromyalgia was a severe medically determinable impairment.  (See AR 24-25).

The Court will not consider a reason for discounting Dr. Moeller-Bertram's opinion that was not given by the ALJ in the decision.  See Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014)("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)("We are constrained to review the reasons the ALJ asserts."; citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) and Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001)).

[13]   The "specific and legitimate" standard applies to the ALJ's rejection of Dr. Moeller-Bertram's opinion about Plaintiff's limitations with respect to her abilities to sit, stand and/or walk, lift, crouch, stoop (bend), climb stairs, climb ladders, pay attention and concentrate as these findings were contradicted by the opinions of other physicians. The "clear and convincing" standard applies to the ALJ's rejection of Dr. Moeller-Bertram's opinion about Plaintiff's abilities to sit and stand at one time, walk every 30 minutes for 10 minutes, twist, need to shift positions at will and elevate her legs during prolonged sitting, have unscheduled breaks, be absent from work, and not work even "low stress" jobs as these findings were not contradicted by the opinions of other physicians.  See Trevizio v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017).

[14]   While treatment notes dated February 1, 2018 and March 1, 2018 state that Plaintiff's symptoms were "made worse by walking" (see AR 736, 740), there are no notations about Plaintiff's walking limitations.
(continued...)

1    See <u>Connett v. Barnhart</u>, 340 F.3d 871, 875 (9th Cir. 2003)("We hold that
2    the ALJ properly found that [the treating doctor's] extensive
3    conclusions regarding [the claimant's] limitations are not supported by
4    his own treatment notes."); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th
5    Cir. 2002)("The ALJ need not accept the opinion of any physician
6    including the treating physician, if that opinion is brief, conclusory,
7    and inadequately supported by clinical findings.").

9        Second, the ALJ observed that Dr. Moeller-Bertram's treatment notes
10   reflect that Plaintiff's symptoms for her neck and lower back pain and
11   fibromyalgia were adequately managed with medication and did not cause
12   any problems with her daily activities. (AR 28). (<u>See</u> AR 611, 614
13   [September 3, 2015: "[Plaintiff] has been treated with Norco in the past
14   with good relief and most recent Ibuprofen 600 mg 1 PO 3-4 daily.";
15   Plaintiff was prescribed Norco and a Lidoderm patch]. Monthly treatment
16   notes from September 30, 2015 to May 18, 2016, and February 1, 2018,
17   consistently reflect that Plaintiff was able to manage her pain with
18   medication without any side effects or adverse impact on the activities
19   of daily life. (<u>See</u> AR 616, 618-19, 21-22, 624-25, 627-628, 630 670,
20   672-673, 675).[15]  <u>See</u> <u>Warre v. Comm'r of the SSA</u>, 439 F.3d 1001, 1006

---

[14]  (...continued)
Moreover, the Desert Clinic records submitted to the Appeals
Council also fail to indicate any walking limitations.

[15]  While some medical records may contain conflicting
information, the ALJ was entitled to resolve such conflicts.  <u>See</u>
<u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1041-42 (9th Cir. 2008)("The ALJ is
responsible for determining credibility, resolving conflicts in medical
testimony, and for resolving ambiguities."; citation omitted); <u>Morgan v.</u>
<u>Comm'r of Soc. Sec.</u>, 169 F.3d 595, 603 (9th Cir. 1999)("The ALJ is
responsible for resolving conflicts in medical testimony, and resolving
ambiguity.").

(9th Cir. 2006)("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."); <u>Ford v. Saul</u>, 950 F.3d 1141, 1155 (9th Cir. 2020)("A conflict between a treating physician's opinion and a claimant's activity level is a specific and legitimate reason for rejecting the opinion."); <u>Rollins v. Massanari</u>, 261 F.3d 853, 856 (9th Cir. 2001)(upholding ALJ's rejection of treating physician's opinion where the doctor's extreme restrictions were inconsistent with the level of the claimant's activity).

The Desert Clinic treatment notes submitted to the Appeals Council also report that during the period at issue (March 1, 2014 through March 31, 2017) Plaintiff's symptoms for her neck and lower back pain and fibromaylgia were adequately managed with medication. (<u>See</u> AR 119, 121 [June 15, 2016]; 122, 124 [July 15, 2016]; 125-26, 128, 134 [August 3, 2016]; 138 [August 10, 2016]; 157 [August 17, 2016]; 163 [August 24, 2016: "The patient reports that the pain is better with: rest, medication. . . . The pain does not interfere with activities of daily living, including: bathing, hygiene, dressing, walking, climbing stairs, eating, shopping, preparing meals, housework, driving, transportation."], 170 [September 26, 2016];  178 [October 24, 2016]; 189 [November 21, 2016]; 194-95 [January 3, 2017]; 201 [January 6, 2017]; 212 [February 23, 2017]; 217  [March 23, 2017]; and 223 [April 27, 2017]).[16]

---

[16]  Moreover, the Desert Clinic treatment notes for the period following the date last insured also consistently report that Plaintiff's symptoms were adequately managed with medication.  <u>See</u> AR 228 [June 5, 2017]; 232 [June 19, 2017]; 237-38 [June 29, 2017]; 244-46 [August 24, 2017]; 258, 260 [October 19, 2016]; 266 [November 9, 2017];
(continued...)

The ALJ's finding that, although Plaintiff complained of neck and back pain, the diagnostic findings and physical examination findings were mostly unremarkable in that they reflected "a mild decreased range of motion of her neck and no evidence of swelling or edema of her legs such that she would require elevation of her feet throughout the day or the need to lie down" (AR 28), was amply supported by the record. (See AR 571-73 [July 16, 2013 physical examination], 567-69 [September 24, 2013 physical examination], 563-65 [March 7, 2014 physical examination], 558-59 [August 25, 2014 physical examination], 575-77 [June 17, 2015 physical examination], 562 [August 6, 2015 x-rays of lumbar spine: "Severe degenerative disc disease L3-4, minimal to mild disc space narrowing remaining lumbar levels."], 586 [August 6, 2015 x-ray of cervical spine: "Minimal to mild disc space narrowing C5-6. Straightening of the cervical curvature noted."], 580-82 [August 7, 2015 physical examination], 612-14 [September 3, 2015 physical examination], 617 [September 30, 2015 physical examination], 620 [October 29, 2015 physical examination], 623-24 [December 2, 2015 physical examination], 626 [January 19, 2016 physical examination], 629 [February 17, 2016 physical examination], 632 [March 16, 2016 physical examination], 667-69 [May 14, 2016 physical examination], 671 [April 13, 2016 physical examination], 674 [May 18, 2016 physical examination].

These findings were also reflected in the records for the period following the date last insured. (See AR 730 [January 4, 2018 physical

---

[16]  (...continued)
273, 275 [December 7, 2017]; 103-04 [February 1, 2018]; 99-100 [March 1, 2018]; 96 [March 30, 2018]; 92 [April 26, 2018]; 88 [May 24, 2018]).

examination], 733 [February 1, 2018 physical examination], and 738 [March 1, 2018 physical examination]).  See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005)(upholding ALJ's rejection of the treating physician's opinion because his own clinical notes contradicted opinion); Ford, 950 F.3d at 1155 ("An ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation when determining how much weight to give a medical opinion."); see also 20 C.F.R. § 404.1527(d)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion.  The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.").

The Desert Clinic treatment notes submitted to the Appeals Council also support the ALJ's finding that diagnostic findings and physical examination findings concerning Plaintiff's neck and lower back pain and fibromyalgia during the period at issue (March 1, 2014 through March 31, 2017) and subsequent to that period of time, were mostly unremarkable. (See AR 70, 74, 79, 83–84, 87–88, 91–92, 120, 123, 163–67, 179, 184, 191–92, 197–98, 203–04, 209–210, 214, 219–20, 224–226, 232–34, 240–42, 246–48, 268–70, 274 [reports of physical examinations on June 15, 2016, July 15, 2016, August 24, 2016, October 24, 2016, November 21, 2016, January 3, 2017, January 6, 2017,  January 26, 2017, February 23, 2017, March 23, 2017, April 27, 2017, June 19, 2017, June 29, 2017, August 24, 2017, November 9, 2017, December  7, 2017,  April 26, 2018, and May 24, 2018]).

Based on the Court's review of the administrative record, including the records that were submitted to the Appeals Council, Dr. Moeller-Bertram's treatment notes, which do not indicate that Plaintiff had any walking limitations and reflect that Plaintiff's symptoms for her neck and lower back pain and fibromyalgia were adequately managed with medication, and the medical records, which contain mostly unremarkable diagnostic findings and physical examination findings, do not support most of Dr. Moeller-Bertam's restrictive opinion regarding Plaintiff's functional limitations.   Accordingly, the Court finds that the ALJ provided clear and convincing and/or specific and legitimate reasons, supported by substantial evidence in the record, for giving Dr. Moeller-Bertram's opinion little weight.

**B.   The ALJ's Error in Assessing the Opinion of the Consultative Examining Psychologist was Harmless.**

Plaintiff asserts that the ALJ failed to properly assess the opinion of the consultative examining psychologist, Dr. Cross. (See Joint Stip. at 15-17).   Defendant asserts that the ALJ properly evaluated Dr. Cross's opinion. (See Joint Stip. at 8-15).

1.   <u>Dr. Cross</u>

On April 8, 2016, Kara Cross, Ph.D. (a clinical psychologist) prepared a report following a comprehensive psychological evaluation/complete mental status evaluation of Plaintiff, (see AR 634-40), in which she diagnosed Plaintiff with generalized anxiety disorder

16

and assessed a current Global Assessment Functioning score of 69[17]. (AR 638-39). Dr. Cross opined, _inter alia_, that Plaintiff was moderately limited in her "[a]bility to accept instructions from supervisors" and in her "[a]bility to relate to co-workers and the public in an appropriate manner." (AR 639-40).

After extensively summarizing Dr. Cross's report of the consultative examination (_see_ AR 27), the ALJ addressed Dr. Cross's opinion as follows:

> [T]he undersigned gives partial weight to Dr. Cross' opinion but finds that a moderate limitation in her ability to accept instructions form (sic) supervisors and relate to co-workers is not supported by the record based upon her ability

---

[17] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." _Vargas v. Lambert_, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). The GAF includes a scale ranging from 0-100, and indicates a "clinician's judgment of the individual's overall level of functioning." _American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders_ 32 (4th ed. text rev. 2000) (hereinafter _DSM-IV_). According to _DSM-IV_, a GAF score between 61 and 70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within household), but "generally functioning well, has some meaningful interpersonal relationships." _Id._ at 34. "Although GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability (or interact with physical impairments to create a disability), they may be a useful measurement." _Garrison_, 759 F.3d at 1003 n.4.

The Court notes that the DSM-V eliminated the GAF scale. _See_ _Olsen v. Comm'r Soc. Sec. Admin_, 2016 WL 4770038, at *4 (D. Or. Sept. 12, 2016)("The DSM-V no longer recommends using GAF scores to measure mental health disorders because of their 'conceptual lack of clarity . . . and questionable psychometrics in routine practice.'"; quoting DSM-V, 16 (5th ed. 2013)).

1   interacting with examiners and staff at her various medical
2   appointments   and   consultations   as   well   as   the   lack   of
3   evidence showing a significant social disorder.   Nonetheless,
4   the undersigned is aware of the claimant's social issues and
5   anxiety such that the residual functional capacity assessment
6   above has limited the claimant to frequent interaction with
7   coworkers and supervisors with no contact with the public in
8   consideration of these issues."
9   (AR 28-29).

10
11      The ALJ failed to explain how Plaintiff's abilities to interact
12   with medical personnel at appointments and consultations -- which
13   Plaintiff describes as "short-term" interactions (Joint Stip. at 7) --
14   and the absence of evidence showing a significant social disorder had
15   any bearing on the two areas in which Dr. Cross found Plaintiff to be
16   moderately   limited   (accepting   instructions   from   supervisors,   and
17   relating to coworkers and the public in an appropriate manner).   See
18   Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999)("The ALJ must set
19   out   in   the   record   his   reasoning   and   evidentiary   support   for   his
20   interpretation   of   the   medical   evidence.").      Indeed,   as   the   ALJ
21   implicitly   admitted   (see   AR   29),   there   was   evidence   in   the
22   administrative   record   (including   records   submitted   to   the   Appeals
23   Council)[18] concerning Plaintiff's anxiety and social issues (see AR 39-
24   41, 48-49, 57-58, 73, 79, 83, 87, 91, 130, 143, 150, 169, 178, 206, 212,
25   217, 223, 228, 231, 237, 244, 256, 258, 266, 733, 737, 741; see also AR

26
27      [18]   As set forth above in Section A, the Court has taken into
28   account newly submitted Inland Psychiatric Medical Center treatment
    records dated September 21, 2017 through March 22, 2018.

304 [Plaintiff's hearing testimony], 471-72 [Plaintiff's Adult Function Report dated March 26, 2016], 480-81 [Plaintiff's boyfriend's Third Party Adult Function Report dated April 1, 2016]), and the ALJ found that Plaintiff's general anxiety disorder was a severe impairment (AR 20). Therefore, the ALJ impermissibly substituted her own interpretation of the medical evidence for Dr. Cross's opinion about Plaintiff's moderate limitations. See Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000)("[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record."); see also Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975)(an ALJ who is not qualified as a medical expert cannot make "his own exploration and assessment as to [the] claimant's physical condition").

Accordingly, the Court finds that the ALJ failed to provide a "clear and convincing" reason, supported by substantial evidence in the record, for rejecting Dr. Cross's opinion that Plaintiff had moderate limitations in her abilities "to accept instructions from supervisors" and "to relate to co-workers and the public in an appropriate manner."[19]

However, the ALJ's failure to properly reject Dr. Cross's opinion was harmless error. See Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th

---

[19]    The "clear and convincing" standard applies because Dr. Cross's opinion with respect to Plaintiff's ability to accept instructions from supervisors, and relate to coworkers and the public in an appropriate manner was not contradicted by the opinions of the State Agency psychological consultants, Uwe Jacobs, Ph.D and C. Lawrence, Ph.D. (see AR 337-38) -- to which the ALJ did not give "great weight (see AR 29).  See Trevizo, 875 F.3d at 675.

Cir. 2008)(the ALJ's error is harmless if it is "clear from the record
. . . that [the ALJ's error] was "inconsequential to the ultimate non-
disability determination."; citation omitted); see also Carmickle v.
Commissioner, 533 F.3d 1155, 1162 (9th Cir. 2008)("[T]he relevant
inquiry in this context is not whether the ALJ would have made a
different decision absent any error, . . ., it is whether the ALJ's
decision remains legally valid, despite such error."); Burch v.
Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)("A decision of the ALJ will
not be reversed for errors that are harmless.").

    As the ALJ found (see AR 29), the RFC limiting Plaintiff to
frequent interaction with coworkers and to no contact with the public
adequately addressed Dr. Cross's opinion that Plaintiff was moderately
limited in her ability to relate to coworkers and the public in an
appropriate manner.   See Stubbs-Danielson v. Astrue, 539 F.3d 1169,
1174-76 (9th Cir. 2008)(The ALJ is responsible for translating a
claimant's impairments into work-related functions and determining RFC).
Moreover, even with a moderate limitation in her ability to accept
instructions from supervisors, Plaintiff would still be able to perform
the duties of the job of charting clerk (Dictionary of Occupational
Titles ["DOT"] 245.362-010, light work) as generally performed (see AR
29-30).   According to DOT 245.362-010 (Medical-Record Clerk), there is
no requirement that a charting clerk accept instructions from
supervisors, and speaking to people is not a significant part of the
position.   Indeed, the VE testified that a person with Plaintiff's RFC
could perform work as a charting clerk specifically because the work did
not involve any interaction with people.   (See AR 315-16).

Since the ALJ's RFC determination limited Plaintiff to frequent interaction with coworkers and to no contact with the public, and the ALJ found that Plaintiff was able to perform her past relevant work as a charting clerk as generally performed, the ALJ's error in failing to properly reject Dr. Cross's opinion concerning Plaintiff's moderate limitations in accepting instructions from supervisors and relating to coworkers and the public in an appropriate manner was harmless.

**C. The ALJ Provided Clear and Convincing Reasons for Discounting Plaintiff's Subjective Symptom Testimony**

Plaintiff asserts that the ALJ did not provide specific, clear and convincing reasons for discounting Plaintiff's testimony about her symptoms and limitations. (See Joint Stip. at 17-20, 24-26). Defendant asserts that the ALJ provided proper reasons for discounting Plaintiff's subjective symptom testimony. (See Joint Stip. at 20-24).

1.   <u>Legal Standard</u>

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis. <u>Trevizo v. Berryhill</u>, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. <u>Garrison v. Colvin</u>, 759 F.3d 995, 1014-15 (9th Cir. 2014). "In this analysis, the claimant is <u>not</u> required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." <u>Id.</u> (emphasis in original). "Nor must a claimant produce objective medical

evidence of the pain or fatigue itself, or the severity thereof." Id. (citation omitted).


If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity. Trevizo, 871 F.3d at 678 (citation omitted); see also Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."); Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996)("[T]he ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so."). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." Garrison, 759 F.3d at 1015 (citation omitted).


Where, as here, the ALJ finds that a claimant suffers from a medically determinable physical or mental impairment that could reasonably be expected to produce her alleged symptoms, the ALJ must evaluate "the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities for an adult." Soc. Sec. Ruling ("SSR") 16-3p, 2017 WL 5180304, at *3.[20] SSR 16-3p superseded SSR 96-7p and

---

[20] SSR 16-3p, which superseded SSR 96-7p, is applicable to this case, because SSR 16-3p, which became effective on March 28, 2016, was in effect at the time of the Appeal Council's March 26, 2019 denial of
(continued...)

eliminated the term "credibility" from the Agency's sub-regulatory policy. However, the Ninth Circuit Court of Appeals has noted that SSR 16-3p:

> makes clear what [the Ninth Circuit's] precedent already required: that assessments of an individual's testimony by an ALJ are designed to "evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms," and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.

Trevizo, 871 F.3d at 678 n.5 (quoting SSR 16-3p)(alterations omitted).

In discrediting the claimant's subjective symptom testimony, the ALJ may consider: "ordinary techniques of credibility evaluation, such as . . . prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and the claimant's daily activities." Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, also may be relevant. Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014). In addition, the ALJ may consider the observations of treating and examining physicians regarding, among other matters, the functional restrictions caused by the claimant's symptoms. Smolen, 80 F.3d at 1284; accord Burrell, 775 F.3d at 1137. However, it is improper for an

---

[20] (...continued)
Plaintiff's request for review. Nevertheless, the regulations on evaluating a claimant's symptoms, including pain, see 20 C.F.R. § 404.1529 and 416.929, have not changed.

ALJ to reject subjective testimony based "solely" on its inconsistencies with the objective medical evidence presented.  Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009)(citation omitted).

The ALJ must make a credibility determination with findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008)(citation omitted); see Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015)("A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.") (citation omitted). Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

    2.   Plaintiff's Statements and Testimony

    In an Adult Function Report dated March 26, 2016 (see AR 465-73), Plaintiff indicated that she cannot work because of her limited abilities to sit, walk and stand and "all other necessary requirements to work". (AR 465). Plaintiff identified anxiety, numbness, tingling and sharp pain throughout her body, and extreme fatigue as contributing factors. Id. Her daily activities include waking up early, getting her children ready for school, taking her children to school, caring for her

3-year-old son (although some days she is not able to take care of him), cooking, cleaning and performing other chores when the pain is moderate, helping her children with homework, feeding pets, and cleaning the litter box with the help of her children. (AR 466). Her severe pain affects her sleep. (Id.). She can take care of her personal needs and grooming (although she sometimes needs to be reminded by her kids to do so) and she writes down reminders to take medicine. (AR 466-67). She prepares meals, and is able to do light cleaning, small to medium laundry (at night or on weekends, with help), sweep, and mop. (AR 467). She is able to drive and go out alone, shop in stores for food, medicine and personal needs three times a week and is able to pay bills, count change, handle a savings account, and use a checkbook/money orders. (AR 467-68). Her hobbies and interests are reading, playing with her son, and helping her children with homework. (AR 469, 472). She spends time with others on the phone when she has time, does not have any problems getting along with others, but does not respond to messages if she is in pain. (AR 469-70). Her lower energy level and strength, as well as her extreme pain has interfered with her meal preparation and her chores and she sometimes takes breaks because of fatigue or pain and sometimes does not finish chores. She cannot go out with her children for over 2 hours because of pain. (AR 467, 470). Her conditions affect her abilities to walk, stand, sit, lift, squat bend, reach, stair-climb, and concentrate (varies). (AR 470). She can walk for 15 to 20 minutes to no more than two hours before needing to rest. (Id.). She can pay attention well, follow written and spoken instructions and get along well with authority figures. (AR 470-71). Her conditions are treated with therapy, medication and rest. (AR 472).

At the May 4, 2018 administrative hearing, Plaintiff testified that she lives with her boyfriend and her four children ages 16, 8, 5 and 18 months. (AR 306-07). She last worked in 2013 (as a chart prep clerk), but she stopped working because she did not feel "too well at times" (she had chronic fatigue and muscle pain), was a little anxious, and because her doctor put her on temporary disability. (AR 304, 310). She experiences pain daily but the pain level varies. (AR 313). She can sit at one time for 30 to 45 minutes (after one hour she gets tingling and back pain, and her legs hurt). (<u>Id.</u>). She is not able to do a desk job, even if she did not have to lift much or walk around much, because of neck pain radiating down her arm, spinal pain, and fibromyalgia tender points. (<u>Id.</u>). She sees Dr. Warham at Inland Psychiatry on a monthly basis. (AR 304). She has seen Dr. Moeller-Bertram since 2015. (AR 311-12). The medications she takes (Lamictal, Wellbutrin, Cymbalta) cause her side effects (she is very sensitive so she prefers low doses), such as lightheadedness, dizziness, nausea and stomach cramping, but the medications help even though she still gets symptoms. (AR 304-05, 312). Some nights she does not sleep well because of pain in her jaw, hips, left side, and muscle spasms. (AR 311). She is able to drive (she waits to drive for four hours after taking medication). (AR 306). She drives her two younger children to and from school three to four times a week (her boyfriend drives the children when he can); she does not drive anywhere else. (AR 307, 310). She takes care of her two younger children during the day (while she is doing hot and/or cold therapy, sitting down, stretching, and lying down on her side). She makes easy and light meals (such as sandwiches), changes diapers, and bathes her 18-month old child (her boyfriend and oldest child sometimes help her at

night).  She tries to take her children outside for 15 to 20 minutes. (AR 307-09, 311).  She does light chores, such as picking up a few things or wiping a counter, but her pain and caring for her children makes it difficult (she tries to do more on the weekend).  (AR 309).

### 3.   The ALJ's Credibility Findings

After summarizing Plaintiff's hearing testimony and discussing the medical evidence in the record (see AR 23-26), the ALJ found that Plaintiff's testimony about the intensity, persistence and limiting effects of her symptoms was not entirely consistent with the objective medical evidence and her activities of daily living.  (See AR 24, 28-29).

The ALJ noted that the medical record reflected consistent medication refills and reports that the medication and treatment were effective at relieving Plaintiff's symptoms with no significant difficulties with her activities of daily living or adverse side effects.  (AR 24).  The ALJ also noted that Plaintiff had not sought outpatient mental health treatment for her anxiety disorder or required emergency care or hospitalization, which according to the ALJ, "indicat[ed] that her mood disorder was well managed with medication." (AR 24, 26).

The ALJ found that Plaintiff's ability to care for young children and maintain a household was inconsistent with her statements regarding

the alleged intensity, persistence, and limiting effects of her symptoms. (AR 28).

### 4. <u>Analysis</u>

The ALJ was entitled to, and properly found, that Plaintiff's testimony about the intensity, persistence and limiting effects of her symptoms was not supported by and inconsistent with the objective medical evidence (<u>see</u> AR 24). <u>See</u> <u>Burch</u>, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); <u>Rollins</u>, 261 F.3d at 587 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."); SSR 16-3p, *5 ("objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities"). <u>See</u> 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work.").

Here, Plaintiff's testimony about her limited ability to walk and sit are belied by regular physical examinations which revealed normal findings and lacked any documentation of her alleged functional

limitations.    As  discussed  above  in  section  A,  the  medical  record (including  the  records  submitted  to  the  Appeals  Council),  reflects  that Plaintiff's  pain  for  her  neck  and  lower  back  pain  and  fibromyalgia  was adequately  managed  with  medication  and  Plaintiff  did  not  report  problems with  her  daily  activities  or  debilitating  side  effects  from  her medication.   (See  AR  119,  121-22,  124-26,  128,  134,  138,  157,  163,  170, 178,  189,  194-95,  201,  206-07,  212,  217,  228,  232,  237-38,  244-46,  258, 266,  273,  275,  611,  614,  616,  618-19,  621-22,  624,  625,  627-28,  630, 631,  670,  672-73,  675,  732).    Plaintiff's  admissions  regarding  pain control  from  her  medications  directly  contradict  her  statements  and testimony  of  disabling  pain.   See  Warre,  439  F.3d  at  1006.

The  record  also  confirms  that  Plaintiff  sought  a  limited  amount  of treatment  for  her  anxiety  disorder  from  a  provider  other  than  her primary  physician  (see  AR  39-53  [Inland  Psychiatric  Medical  Group,  Inc. records  dated  September  21,  2017  through  March  22,  2018]),  suggesting that  her  mental  health  issue  was  also  adequately  managed  with medication.   (See  AR  42  [October  12,  2017:   notation  that  Plaintiff "stayed  on  [Lamictal]  50  mg  daily  and  feels  some  improvement  .  .  .  ."], 45  [November  2,  2017:  "[P]atient  has  done  well  on  current  doses  of Wellbutrin,  Lamictal  and  Cymbalta."]).

The  ALJ  properly  determined  that  Plaintiff's  testimony  about  pain and  functional  limitations  was  inconsistent  with  her  reported participation  in  her  activities  of  daily  living.    "ALJs  must  be especially  cautious  in  concluding  that  daily  activities  are  inconsistent

with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than resting in bed all day." Garrison, 759 F.3d at 1016. Nevertheless, an ALJ properly may consider the claimant's daily activities in weighing credibility. Tommasetti, supra. If a claimant's level of activity is inconsistent with the claimant's asserted limitations, it has a bearing on credibility. Garrison, supra. Here, the ALJ noted that Plaintiff was able to care for her young children, manage a household, perform chores, drive a car, shop, and handle money. See AR 307-09, 311, 466-67, 469, 472 (helping her older children get ready for school, driving her older children to school, taking care of her younger children at home, changing diapers, bathing her youngest child, playing with her younger children, taking her younger children outside, helping her older children with homework, preparing meals for her children and taking care of her house); and AR 309, 466-68, 472 (cooking, light cleaning, doing small to medium laundry, sweeping, mopping, feeding the pets, cleaning the litter box, shopping). The ALJ properly found that these activities belie Plaintiff's testimony of disabling symptoms and limitations. See 20 C.F.R. § 404.1529(c)(3)(1) (a claimant's daily activities are one factor to be considered in evaluating a claimant's symptoms, such as pain). Plaintiff's ability to engage in such activities, even if she sometimes needed assistance and/or breaks (see AR 307-09, 311, 466-67), rendered her testimony about her extremely debilitating conditions (see AR 310, 312-13, 465-67, 469-70, 472) not credible. See Ghanim, 763 F.3d at 1165 ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination.");

Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012)("[T]he ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting;" "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."); see also Burch, 400 F.3d at 680-81 (claimant's allegations of disability properly discredited where claimant was able to care for her own personal needs, cook, clean, shop, interact with her nephew and boyfriend, and manage finances).

The Court finds that the ALJ offered clear and convincing reasons, supported by substantial evidence in the record, for discounting Plaintiff's testimony.

**ORDER**

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: June 29, 2020

                                        /s/
                               ALKA SAGAR
                UNITED STATES MAGISTRATE JUDGE